**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| EUN YOUNG PARK, | |
| Plaintiff, | |
| v. | Civil Action No. 26-504 (BAH) |
| JOSEPH B. EDLOW, *et al.*, | Judge Beryl A. Howell |
| Defendants. | |

**MEMORANDUM OPINION**

Plaintiff Eun Young Park, a citizen of South Korea, seeks to compel defendants Joseph B. Edlow, the director of U.S. Citizenship and Immigration Services, Alissa L. Emmel, the Chief of the U.S. Citizenship and Immigration Services Immigrant Investor Program Office, and Markwayne Mullin, the Secretary of the U.S. Department of Homeland Security, in their official capacities (collectively, "defendants"), to adjudicate her application for an EB-5 visa, which had been in administrative proceedings for more than two years at the time plaintiff initiated this lawsuit. *See* Compl. ¶ 22, ECF No. 1.[1] Plaintiff claims that defendants have unreasonably delayed adjudication of her application, in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), the Mandamus Act, 28 U.S.C. § 1361, and the Declaratory Judgment Act, 28 U.S.C. § 2201. Compl. ¶¶ 4-5, 37. Defendants now move to dismiss for lack of jurisdiction, under Federal Rule of Civil Procedure 12(b)(1), or, alternatively, for failure to state a claim under Rule

---

[1]     An original defendant to this action, Kristi Noem, then-Secretary of the U.S. Department of Homeland Security, has been substituted with the current Secretary of the U.S. Department of Homeland Security, Markwayne Mullin. *See* FED. R. CIV. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

1

12(b)(6).  *See* Defs.' Mot. to Dismiss & Mem. in Supp. Thereof ("Defs.' Mot."), ECF No. 7.  For the reasons set out below, defendants' motion is granted.

## I.     BACKGROUND

The statutory and regulatory background underlying the claims is set out below, followed by a summary of the factual and procedural history of this case.

### A.     Statutory and Regulatory Background

Congress established the EB-5 immigrant-investor visa program through the Immigration Act of 1990, Pub. L. No. 101-649, § 121, 104 Stat. 4978, 4987 (1990) (codified at 8 U.S.C. § 1153(b)(5)), and "is so named because it is the 'fifth employment-based visa category available to foreign nationals' under the Immigration and Nationality Act." *Del. Valley Reg'l Ctr., LLC v. U.S. Dep't of Homeland Sec.*, 106 F.4th 1195, 1197 (D.C. Cir. 2024) (quoting *Mirror Lake Vill., LLC v. Wolf*, 971 F.3d 373, 374 (D.C. Cir. 2020)).  These visas are available "to qualified immigrants seeking to enter the United States for the purpose of engaging in a new commercial enterprise (including a limited partnership)" that "will benefit the United States economy by creating full-time employment for not fewer than 10 United States citizens, United States nationals, or aliens lawfully admitted for permanent residence or other immigrants lawfully authorized to be employed in the United States (other than the immigrant and the immigrant's spouse, sons, or daughters)."  8 U.S.C. § 1153(b)(5)(A).  To that end, the immigrant must have made or be in the process of making an investment of at least $1,050,000 generally or at least $800,000 into a "targeted employment area."  *Id.* § 1153(b)(5)(C)(ii).

"The EB-5 process is administered by USCIS and the State Department." *Del. Valley*, 106 F.4th at 1198.  First, "USCIS processes and approves the visa petitions—*i.e.*, it assesses whether petitioners qualify for the requested visa," and then "[t]he State Department determines how many visas are available and allocates visas to approved applicants." *Id.* (citing 8 C.F.R. §§ 100.1, 103.2,

254.2(a), and 22 C.F.R. §§ 42.41, 42.51).  "Once an immigrant investor obtains an EB-5 visa, they may apply for a two-year conditional lawful-permanent-resident status," after which period, "the investor may file a petition to become a permanent resident in the United States."  *Id.* (citing 8 U.S.C. § 1186b(a), (c), (d), and 8 C.F.R. §§ 216.1, 216.6, 245.2).

### B.    Factual Background

Plaintiff paid the appropriate fees and filed the instant I-526E Petition on January 5, 2024, to which USCIS assigned Case Number IOE8079101172.  Compl. ¶¶ 19-20, 31.  "The application was received by USCIS's Service Center and subsequently transferred to the USCIS Immigrant Investor Program [O]ffice," which is "a program office . . . devoted exclusively to EB-5 adjudications."  *Id.* ¶ 21.  In the two years since the petition was filed, "[d]efendants have offered no explanation for their persistent delay and no indication whether a decision on the petition is imminent."  *Id.* ¶ 28.  Plaintiff seeks an expeditious decision on this petition because "[t]he delay in adjudication postpones the date on which she will be eligible to live with her family studying in the U.S."  *Id.* ¶ 29.  According to plaintiff, such "unreasonable delay has caused Plaintiff significant harm, including prolonged uncertainty regarding lawful permanent residence, inability to proceed with adjustment of status or immigrant visa processing, and financial and emotional hardship."  *Id.* ¶ 18.

### C.    Procedural Background

Plaintiff filed the instant complaint on February 17, 2026, seeking "to compel Defendants to make a decision on h[er] long-pending I-526E petition without further unreasonable day."  Compl. ¶ 30.  Defendants have now moved to dismiss, arguing that "this Court lacks subject matter jurisdiction over Plaintiff's claims regarding the processing of her Form I-526 petition," so "the Complaint must be dismissed pursuant to Rule 12(b)(1)," and that "Plaintiff alleges no facts

beyond the approximate two-year delay to make a claim of unreasonable delay plausible," so the complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6). Defs.' Mot. at 1.

On June 5, 2026, plaintiff was ordered to show cause "by June 12, 2026, why defendants' [] Motion to Dismiss should not be granted as conceded," given that any opposition was due several weeks earlier, on May 15, 2026. Minute Order (June 5, 2026) (citing D.D.C. Local Rule 47(b)). On June 15, 2026, plaintiff was granted leave to file a belated opposition to defendants' dismissal motion. *See* Pl.'s Resp. to O.S.C. & Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 8 (arguing excusable neglect justified acceptance of the untimely filing); Minute Order (June 15, 2026) (granting leave to file and discharging order to show cause). The pending motion to dismiss became ripe for resolution on June 18, 2026. *See* Defs.' Reply in Further Supp. of Defs.' Mot. to Dismiss & Opp'n to Pl.'s Cross-Mot. for Summ. J. ("Defs.' Reply"), ECF No. 9.[2]

## II.    APPLICABLE LEGAL STANDARDS

Set out below are the legal standards applicable to defendants' motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim.

### A.    Federal Rule of Civil Procedure 12(b)(1)

"Federal courts are courts of limited jurisdiction," *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)), and "have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto," *Johnson v. Comm'n on Presidential Debates*, 869 F.3d 976, 980 (D.C. Cir. 2017) (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)). Consequently, courts "have an affirmative obligation 'to consider whether the constitutional and

---

[2]    The title of defendants' reply brief, as well as the last sentence of defendants' reply brief, references plaintiff's purported cross-motion for summary judgment, *see* Defs.' Reply at 9 ("The complaint should be dismissed and Plaintiff's Cross-Motion for Summary Judgment should be denied."), but this is incorrect since no such cross motion is pending.

statutory authority exist for us to hear each dispute,'" *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 196 (D.C. Cir. 1992)).

Federal Rule of Civil Procedure 12(b)(1) permits dismissal for "lack of subject-matter jurisdiction." FED. R. CIV. P. 12(b)(1).  To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), "[t]he plaintiff bears the burden of invoking the court's subject matter jurisdiction." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).  When a jurisdictional argument "present[s] a dispute over the factual basis of the court's subject matter jurisdiction, . . . 'the court must go beyond the pleadings and resolve'" any dispute necessary to the disposition of the motion to dismiss.  *Feldman v. FDIC*, 879 F.3d 347, 351 (D.C. Cir. 2018) (alteration in original) (quoting *Phx. Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000)).  When considering a motion to dismiss under Rule 12(b)(1), the court must determine jurisdictional questions by accepting as true all uncontroverted material factual allegations contained in the complaint and "constru[ing] the complaint liberally, granting plaintiff[s] the benefit of all inferences that can be derived from the facts alleged."  *Hemp Indus. Ass'n v. DEA*, 36 F.4th 278, 281 (D.C. Cir. 2022) (second alteration in original) (quoting *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011)).

### B.      Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the plaintiff pleads factual content that is more than "'merely consistent with' a defendant's liability" and "allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556-57). "Factual allegations, although assumed to be true, must still 'be enough to raise a right to relief above the speculative level.'" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (per curiam) (quoting *Twombly*, 550 U.S. at 555). Courts do not, however, "assume the truth of legal conclusions . . . or 'accept inferences that are unsupported by the facts set out in the complaint.'" *Air Exclusions LLC v. Yellen*, 66 F.4th 272, 277 (D.C. Cir. 2023) (quoting *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 732 (D.C. Cir. 2007), and citing *Iqbal*, 556 U.S. at 678). In determining whether a complaint fails to state a claim, a court may consider only the facts alleged in the complaint and "any documents either attached to or incorporated in the complaint and matters of which the court may take judicial notice." *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020) (alterations in original accepted and citation omitted).

## III.   DISCUSSION

Defendants advance three main arguments in support of dismissal of the complaint, contending, first, that 8 U.S.C. § 1252(a)(2)(B)(ii) presents a jurisdictional bar to consideration of plaintiff's claims; second, that review is not permitted under the APA; and, third, that plaintiff has failed to state a claim for unreasonable delay. *See* Defs.' Mot. at 8-18. The subject-matter jurisdiction challenges brought under Federal Rule of Civil Procedure 12(b)(1) are considered first and rejected, and then the challenge for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is considered and found persuasive. Accordingly, defendants' motion to dismiss is granted.

### A.   No Jurisdictional Bar Applies

Defendants raise two related statutory challenges to the exercise of jurisdiction, neither of which is persuasive. As always when considering questions of jurisdiction, the D.C. Circuit has

reminded that such inquiries must be decided "against the backdrop of 'a familiar principle of statutory construction: the presumption favoring judicial review of administrative action.'" *Make the Rd. N.Y. v. Wolf*, 962 F.3d 612, 623 (D.C. Cir. 2020) (quoting *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 229 (2020)).  First, defendants contend that "[t]he Complaint is subject to dismissal for lack of subject matter jurisdiction under 8 U.S.C. § 1252(a)(2)(B)(ii)," Defs.' Mot. at 8, which provision states that "no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title," 8 U.S.C. § 1252(a)(2)(B)(ii).  By the provision's terms, its applicability is limited to "decision[s] or action[s]," and accordingly when applying this provision, the D.C. Circuit found "that Congress intended to preclude judicial review of those decisions 'specified under this subchapter to be in the discretion of the Attorney General or the Secretary,' whether or not those decisions grant or deny an immigrant relief from removal." *iTech U.S., Inc. v. Renaud*, 5 F.4th 59, 66 (D.C. Cir. 2021) (quoting 8 U.S.C. § 1252(a)(2)(B)(ii)).

In this case, the provision presents no jurisdictional bar because defendants have neither rendered a decision nor taken any action.  *See* Pl.'s Opp'n at 3 ("Where no decision has been issued and no action has been taken in over 29 months, there is nothing within the scope of the statutory bar.").  Indeed, defendants' motion characterizes this case as involving "agency inaction." Defs.' Mot. at 18 n.6 ("[T]he basis for Plaintiff's challenge is not of final agency action, but rather agency inaction.").  Where a visa "application is still undergoing administrative processing, . . . the decision is not final," *Ghadami v. U.S. Dep't of Homeland Sec.*, No. 19-cv-397 (ABJ), 2020 WL 1308376, at *5 (D.D.C. Mar. 19, 2020), so "any [p]laintiff with an application in 'administrative

processing' has not yet received a final decision," *Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Kerry*, 168 F. Supp. 3d 268, 287 (D.D.C. 2016) (GK).  Without either an action or a decision, this statutory provision poses no bar to judicial review.

Second, defendants claim that a section of the APA, codified at 5 U.S.C. § 701(a), withdraws judicial review, arguing the APA does not apply where "statutes preclude judicial review," Defs.' Mot. at 9 (quoting 5 U.S.C. § 701(a)(1)), and that, here, "a statute (8 U.S.C. § 1252(a)(2)(B)(ii)) precludes judicial review in this case," *id.*  This argument fails because, as recounted above, 8 U.S.C. § 1252(a)(2)(B)(ii) does not preclude judicial review.

Accordingly, neither 8 U.S.C. § 1252(a)(2)(B)(ii) nor 5 U.S.C. § 701(a) preclude judicial review of plaintiff's claims presented to this Court.

### B.      The Adjudication Delay Is Not Unreasonable

In the alternative, defendants contend that "Plaintiff's Complaint should be dismissed for failure to state a claim because any delay here is not unreasonable as a matter of law."  Defs.' Mot. at 10.  As defendants emphasize, "[w]hen a plaintiff seeks a writ of mandamus to 'compel agency action unlawfully withheld or unreasonably delayed,' 5 U.S.C. § 706(1), a court 'starts from the premise that issuance of the writ is an extraordinary remedy, reserved only for the most transparent violations of a clear duty to act,'" and "[t]he central question in evaluating 'a claim of unreasonable delay' is 'whether the agency's delay is so egregious as to warrant mandamus.'"  *Id.* (quoting *In re Bluewater Network*, 234 F.3d 1305, 1315 (D.C. Cir. 2000), and *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008)).  "There is 'no *per se* rule as to how long is too long to wait for agency action.'"  *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004) (quoting *In re Int'l Chem. Workers Union*, 958 F.2d 1144, 1149 (D.C. Cir. 1992) (per curiam)).

The D.C. Circuit has enumerated six factors to consider when determining whether a delay in agency action is unreasonable, known as the "*TRAC* Factors":

(1) [T]he time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Telecomms. Rsch. & Action Ctr. v. FCC* (*TRAC*), 750 F.2d 70, 80 (D.C. Cir. 1984) (citations and internal formatting omitted); *see also Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023) ("[T]o guide our unreasonable-delay analysis, we ordinarily look to six non-exclusive *TRAC* factors." (citing *TRAC*, 750 F.2d at 80)).   In cases challenging unreasonable agency delay, "the standards for obtaining relief" under the APA and the Mandamus Act are "essentially the same." *Viet. Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010); *see also Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63-64 (2004); *Babamuradova v. Blinken*, 633 F. Supp. 3d 1, 19 (D.D.C. 2022) ("What plaintiffs must show to establish a mandamus claim is similar to what they must show . . . under the APA, as in both instances plaintiffs must establish that the government has a clear, nondiscretionary duty.").   These factors will be applied here.

### 1.   *TRAC* Factors 1 and 2

"The first two *TRAC* factors focus on the extent of and reasons for the agency delay," *Afghan & Iraqi Allies v. Blinken*, 103 F.4th 807, 816 (D.C. Cir. 2024), and, as a consequence, are "typically considered together," *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 317 (D.D.C. 2020) (JEB).   As for *TRAC* factor one, "the time agencies take to make decisions must be governed by a 'rule of reason.'"   750 F.2d at 80 (quoting *Potomac Elec. Power Co. v. ICC*, 702 F.2d 1026, 1034 (D.C. Cir. 1983)).   "In assessing whether an agency follows a rule of reason, we evaluate the length of the delay in light of 'the complexity of the task at hand, the significance (and permanence) of

9

the outcome, and the resources available to the agency.'" *Da Costa*, 80 F.4th at 340 (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003)). The D.C. Circuit "ha[s] described this as the 'most important' consideration under *TRAC*." *Afghan & Iraqi Allies*, 103 F.4th at 816 (quoting *In re Core Commc'ns*, 531 F.3d at 855). "For *TRAC* factor two, we consider whether Congress set a deadline for agency action." *Da Costa*, 80 F.4th at 344. "The second *TRAC* consideration thus 'gives content to the first.'" *Afghan & Iraqi Allies*, 103 F.4th at 816 (quoting *In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999)).

As to the first *TRAC* factor, the parties do not dispute that the length of time that USCIS processes visa applications is governed by a rule of reason. Defs.' Mot. at 13 ("[T]he Agency's approach reflects an identifiable rationale grounded in the applicable provisions of the RIA [EB-5 Reform and Integrity Act of 2022, Pub. L. No. 117-103, 136 Stat. 1070] and resource considerations and constitutes a rule of reason governing the time it takes USCIS to act on Form I-526E petitions."); Pl.'s Opp'n at 3 ("Plaintiff acknowledges that USCIS has articulated a FIFO-based processing policy, and that *Da Costa* held a predecessor version of that policy to constitute a rule of reason." (citing *Da Costa*, 80 F.4th at 340-43)). As support for dismissal, defendants highlight that "USCIS balanced several statutory and resource considerations, including those related to project application adjudications, rural prioritization, visa allocations, and processing time goals." Defs.' Mot. at 12.

Plaintiff, noting that "the existence of a stated policy does not foreclose inquiry into whether it is actually being followed," instead "alleges that despite the stated FIFO policy, her petition filed January 5, 2024 has received no action and no explanation for more than 29 months— a plausible allegation that the rule of reason is not functioning as described." Pl.'s Opp'n at 3.

10

The complaint, however, alleges no facts establishing that USCIS is deviating from its policies and procedures, *see* Compl., nor does plaintiff's opposition provide any additional factual support for this allegation, *see* Pl.'s Opp'n at 3; Defs.' Reply at 5 ("An incorrect statement of the law and conclusory statements of purported harm do not establish a basis for relief."). Accordingly, no basis is presented to conclude that defendants deviated from their policy other than the length of the delayed adjudication.

"Absent a congressionally supplied yardstick, courts typically turn to case law as a guide." *Kahenya v. Blinken*, No. 23-cv-740 (TSC), 2024 WL 1253854, at *3 (D.D.C. Mar. 25, 2024) (citation omitted). Courts have drawn no bright lines to determine reasonableness, but "[d]ecisions regarding the admission of foreign nationals are granted an especially wide degree of deference, as they frequently implicate relations with foreign powers, or involve classifications defined in the light of changing political and economic circumstances." *Didban v. Pompeo*, 435 F. Supp. 3d 168, 176 (D.D.C. 2020) (CRC) (quotation marks omitted) (quoting *Trump v. Hawaii*, 585 U.S. 667, 702-03 (2018)). This deference has led "judges in this District [to] 'consistently' h[old]" that "two-to-three-year [delays]" "do[] not amount to unreasonable delay." *Tahavori v. Blinken*, No. 23-cv-1460 (JDB), 2024 WL 1328546, at *5 (D.D.C. Mar. 28, 2024) (quoting *Tekle v. Blinken*, No. 21-cv-1655 (APM), 2022 WL 1288437, at *3 (D.D.C. Apr. 29, 2022)); *see also Da Costa*, 80 F.4th at 339-40, 342 (finding a four-and-a-half-year delay not unreasonable); *Azeez v. Murphy*, No. 23-cv-1947 (CRC), 2024 WL 3924565, at *5 (D.D.C. Aug. 23, 2024) (finding seventeen-month delay not unreasonable). In contrast, delays of five years or more have "generally" been found unreasonable. *Yavari v. Pompeo*, No. 19-cv-2524, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019) (citation omitted); *see also Tahavori*, 2024 WL 1328546, at *4 (citing cases noting the same). Plaintiff's petition is not even at this three-year mark. Notably, in *Da Costa*, the D.C.

11

Circuit affirmed dismissal of a visa applicant's unreasonable delay claim reasoning that the four-and-a-half-year delay was "not sufficient to show that USCIS does not follow a rule of reason in processing EB-5 applications."  80 F.4th at 339-40, 342.  This factor favors defendants.

With respect to the second *TRAC* factor, plaintiff emphasizes that "Congress expressed that immigration benefit applications should be completed within 180 days" and that her application "has been pending nearly ten times that period."  Pl.'s Opp'n at 3 (citing 8 U.S.C. § 1571(b) ("It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application . . . .")).  The D.C. Circuit found that "even though the language is insufficient to set a deadline, we can look to Congress's aspirational statement as 'a ruler against which the [agency's] progress must be measured.'"  *Da Costa*, 80 F.4th at 344 (alteration in original) (quoting *In re Pub. Emps. for Env't Resp.*, 957 F.3d 267, 274 (D.C. Cir. 2020)).  Consequently, "[t]his factor somewhat favors Plaintiff[], as [she] ha[s] waited longer than 180 days."  *Id.*

### 2.    *TRAC* Factors 3 and 5

The third and fifth *TRAC* factors are related and together examine "the nature and extent of the interests prejudiced by the delay," including whether "human health and welfare" might be implicated.  750 F.2d at 80.  Plaintiff alleges "significant harm, including prolonged uncertainty regarding lawful permanent residence, inability to proceed with adjustment of status or immigrant visa processing, and financial and emotional hardship," Compl. ¶ 18, and elaborates that "[t]he delay has specifically prevented her from pursuing adjustment of status or consular processing, from joining immediate family members currently residing and studying in the United States, and from making necessary financial and personal decisions dependent on resolution of her immigration status," Pl.'s Opp'n at 4.  In response, defendants emphasize that "there is no guarantee that Plaintiff's petition will be approved, or that Plaintiff will be determined to be

eligible for any of the subsequent steps of the immigration process" so that "[a]ny allegation that the delay here in adjudicating the Form I-526E petition is thwarting Plaintiff's immigration to the United States, or harms arising therefrom, is completely speculative."  Defs.' Mot. at 17. Consequently, according to defendants, "[a]lthough Plaintiff articulates financial and emotional frustrations during the adjudicative process, all Form I-526E petitioners bear similar frustrations and yet, Plaintiff asks to be moved ahead of other Form I-526E petitioners who are in the same process."  Defs.' Reply at 8 (citing Pl.'s Opp'n at 4).

Defendant is correct that plaintiff's claims of "prolonged uncertainty," and "financial and emotional hardship" do not represent a sufficient basis for *TRAC* factors three and five to tilt in her favor.  Compl. ¶ 18; *see Da Costa*, 80 F.4th at 345 ("The financial harms Bega alleges, along with the uncertainty that results any time an individual must continue to wait to secure a benefit, are insufficient to tip *TRAC* factors three and five in his favor.").  Indeed, plaintiff does not "link[] the delayed adjudication of [her] petition to health or welfare harms" such as by "alleg[ing] that [she is] unable to access electricity, water, food, or shelter."  *Id.*; *see also* Defs.' Mot. at 18 (quoting the same).

Prolonged separation from immediate family members may be considered a risk to human health and welfare, and consequently, "[c]ourts in this jurisdiction have frequently considered the impact of familial separation on the health and welfare of plaintiffs under *TRAC* factors three and five."  *Aghazadeh v. Garland*, No. 23-cv-3150 (CKK), 2024 WL 3617468, at *5 (D.D.C. Aug. 1, 2024) (citing, *inter alia*, *Tate v. Pompeo*, 513 F. Supp. 3d 132, 150 (D.D.C. 2021) (BAH) (finding the third and fifth *TRAC* factors to weigh in plaintiffs' favor in light of the separation of friends, family, and loved ones), and *Isse v. Whitman*, No. 22-cv-3114 (BAH), 2023 WL 4174357, at *7-8 (D.D.C. June 26, 2023) (finding the third and fifth *TRAC* factors to weigh in plaintiff's favor in

light of the separation from immediate family)); *see also Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 95 (D.D.C. 2020) (JDB) (conceding that plaintiff's long separation from her family threatened her health and welfare).   Yet, here, plaintiff is apparently an adult and does not specify which family members are "currently residing and studying in the United States," whether those family members are in this country temporarily until their studies are completed, whether she is in any way dependent on those family members, or whether she has family members also residing near her in Seoul, South Korea.   Pl.'s Opp'n at 4; *see also* Compl. ¶ 29 ("The delay in adjudication postpones the date on which she will be eligible to live with her family studying in the U.S."). Plaintiff has not supplied enough information about her familial separation to establish that *TRAC* factors three and five should tilt in her favor and, thus, these *TRAC* factors favor defendants.

### 3.      *TRAC* Factor 4

The fourth *TRAC* factor considers whether "expediting delayed action" will have a harmful effect on "agency activities of a higher or competing priority."   *TRAC*, 750 F.2d at 80.   "Plaintiff acknowledges this factor weighs most heavily against her under D.C. Circuit precedent."   Pl.'s Opp'n at 4 (citing *Da Costa*, 80 F.4th at 343-44, and *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75-76 (D.C. Cir. 1991)).   Indeed, the D.C. Circuit when considering a challenge on delayed I-526E petitions found that this factor "strongly disfavors the Plaintiff[] here."   *Da Costa*, 80 F.4th at 343.

Granting expedited agency action is considered inappropriate when that relief "would simply 'reorder' a queue of applicants seeking adjudication" and when no concomitant "'net gain' in such adjudications is achieved."   *Tate*, 513 F. Supp. 3d at 149 (quoting *Sarlak v. Pompeo*, No. 20-cv-35 (BAH), 2020 WL 3082018, at *6 (D.D.C. June 10, 2020)).   In particular, "where resource allocation is the source of the delay, courts have declined to expedite action because of the impact on competing priorities."   *Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 117 (D.D.C. 2005) (JDB).   After all, "[w]hile the effect of an individual case would be minimal, an accumulation of

14

such individual cases being pushed by judicial fiat to the front of the line would erode the ability of agencies to determine their priorities." *Tate*, 513 F. Supp. 3d at 150.

Plaintiff outlines an alternative proposal, stating that she "does not seek to be placed at the front of all I-526E petitions," and instead "[s]he respectfully asks the Court to consider a more measured remedy: ordering USCIS to render a decision within a defined, reasonable period—such as 90 days—structured to preserve the agency's broader queue discretion while ensuring no petition remains in indefinite limbo without action or explanation." Pl.'s Opp'n at 4. The D.C. Circuit has already considered and rejected a similar proposal from a plaintiff seeking a more alacritous EB-5 visa adjudication, reasoning that "Plaintiffs' argument that granting relief would not prejudice other applicants rests on wishful thinking about how the USCIS adjudication system works." *Da Costa*, 80 F.4th at 343. Indeed, "[b]ecause USCIS prioritizes adjudication based on the date a petition was filed, 8 U.S.C. § 1153(e); 8 C.F.R. § 204.6(d), a court order requiring USCIS to adjudicate the Plaintiffs' Form I-526 petitions would move them ahead of longer-pending petitions." *Id.*; *see also Niyomwungere v. Blinken*, No. 24-cv-1990 (APM), 2024 WL 5075827, at *5 (D.D.C. Dec. 11, 2024) ("No matter where Plaintiff lies in the queue, the relief he seeks would 'inevitably entail a "judicial reordering" of the Department's priorities.'" (quoting *Khazaei v. Blinken*, No. 23-cv-1419 (JEB), 2023 WL 6065095, at *7 (D.D.C. Sept. 18, 2023))). Plaintiff advances no explanation for why other visa applications should be further delayed for expedition of her own. Since the D.C. Circuit recognizes "no basis for reordering agency priorities," *In re Barr Lab'ys*, 930 F.2d at 76, this factor weighs in favor of defendants.

### 4.    *TRAC* Factor 6

The sixth and final *TRAC* factor provides that "the court need not 'find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed,'" *TRAC*, 750 F.2d at 80 (quoting *Pub. Citizen Rsch. Grp. v. Comm'r, Food & Drug Admin.*, 740

F.2d 21, 34 (D.C. Cir. 1984)), and is neutral absent "plausible evidence of bad faith," *Afghan & Iraqi Allies*, 103 F.4th at 820.  Accordingly, where "Plaintiff makes no allegation of bad faith by USCIS," Pl.'s Opp'n at 4, this factor is weighed as neutral.

### 5.      *TRAC* Factors Considered in Totality

Taking all six *TRAC* factors together, plaintiff has not stated a claim of unreasonable delay under the Mandamus Act or the APA.  As noted, in other cases, delays in visa processing of even longer duration than that presented here have resulted in the same conclusion, and the same reasoning applies to the adjudication of plaintiff's visa application.  *See, e.g.*, *Da Costa*, 80 F.4th at 342 (concluding a four-and-a-half year processing delay does not "itself establish[] that USCIS lacks a rule of reason"); *Akrayi v. U.S. Dep't of State*, No. 22-cv-1289 (CRC), 2023 WL 2424600, at \*3 (D.D.C. Mar. 9, 2023) (finding the nearly three-year "delay in processing . . . does not reach the length that courts have found unreasonable"); *Rahimian v. Blinken*, No. 22-cv-785 (BAH), 2023 WL 143644, at \*7 (D.D.C. Jan. 10, 2023) (reaching the same conclusion based on visa processing delay of forty-one months); *Arab v. Blinken*, 600 F. Supp. 3d 59, 70 (D.D.C. 2022) (BAH) (same, based on visa processing delay of thirty months); *Zaman v. U.S. Dep't of Homeland Sec.*, No. 19-cv-3592 (ABJ), 2021 WL 5356284, at \*6-7 (D.D.C. Nov. 16, 2021) (same, based on visa processing delay of forty-two months).

## IV.    CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted.  An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date:  July 16, 2026

_____
**BERYL A. HOWELL**
United States District Judge

16